UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MELISA MARTIN,

                    *Plaintiff*,

          -against-

NIEUW AMSTERDAM PROPERTY MANAGEMENT,
LLC, LITTLELEAF PROPERTY MANAGEMENT, LLC,
AAA WEST AAA LLC, and VICENTE "RAUL"
ALVAREZ,

                    *Defendants*.

22-CV-3506 (ARR) (TAM)

**OPINION & ORDER**

ROSS, United States District Judge:

Plaintiff, Melisa Martin, brings this action alleging that an apartment superintendent, Vicente "Raul" Alvarez ("Defendant Alvarez"), sexually assaulted her, and that the apartment complex's owners and operators, Nieuw Amsterdam Property Management, LLC, Littleleaf Property Management, LLC, and AAA West AAA, LLC ("Corporate Defendants"), were negligent in retaining Defendant Alvarez after they received complaints about his behavior. Corporate Defendants move for summary judgment, arguing that they did not breach a duty owed to Ms. Martin, that Littleleaf Property Management ("Littleleaf") is not a proper party to this action, and that punitive damages are an inappropriate remedy. Ms. Martin, in addition to disputing the material facts and legal bases cited by Corporate Defendants, cross-moves for summary judgment on her claims against Defendant Alvarez, who has not appeared in this action, and Corporate Defendants.

For the following reasons, I deny Corporate Defendants' motion for summary judgment and grant Ms. Martin's cross-motion for summary judgment in part as to Corporate Defendants and in full as to Defendant Alvarez.

1

# I. BACKGROUND[1]

Ms. Martin brings this tort case against Defendant Alvarez and Corporate Defendants under New York law. On July 7, 2021, the date of Ms. Martin's alleged sexual assault, Nieuw Amsterdam Property Management, LLC was the managing agent of an apartment complex located at 2470 West First Street in Brooklyn, New York ("Apartment Complex"). ECF 40-2, Defs.' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Defs.' 56.1") ¶ 2. AAA West AAA, LLC ("AAA West") was the Apartment Complex's legal owner and Littleleaf Property Management was the registered managing agent of the building. *Id.* At the time, Defendant Alvarez was employed by Nieuw Amsterdam Property Management ("Nieuw Amsterdam") as the Apartment Complex's superintendent.

## A. Complaints about Defendant Alvarez

Prior to Ms. Martin's alleged sexual assault, at least two female tenants in the Apartment Complex complained to Corporate Defendants about Defendant Alvarez's inappropriate behavior. On June 5, 2020, Ellen Paccione complained via email to Apartment Complex management that Defendant Alvarez had sexually harassed her by propositioning her for sex in exchange for rent and car payments. ECF 46, Plaintiff's Statement of Additional Material Facts Pursuant to Local Rule 56.1 ("Pl.'s 56.1") ¶ 17; ECF 47-4 ("Allegation 1"); ECF 47-2 ("Paccione Decl.") ¶ 4. Ms. Paccione's June 5, 2020 complaint described Defendant Alvarez's conduct—which included repeated propositions for sex—as a "serious" issue. Allegation 1. The e-mail, in relevant part, read: "I am extremely uncomfortable approaching [Defendant Alvarez] or asking him to do any work in

---

[1] The following facts are derived from the parties' depositions, exhibits, memoranda, and respective Local Rule 56.1 Statements of Facts. Unless otherwise noted, the facts as recounted here are undisputed. All evidence is construed in the light most favorable to the non-moving party. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

my [apartment] because he will always have something inappropriate to say. Please advise how this will be handled." Allegation 1. Maria Marte, the assistant property manager assigned to the Apartment Complex, received the complaint and conveyed its details to her direct supervisor Boruch Hersh, the General Manager and Chief Operating Officer of Defendant Nieuw Amsterdam. Pl.'s 56.1 ¶ 19. Eliezar Schmulowitz, the Apartment Complex's property manager, was also informed of the June 5, 2020 complaint. *Id.* ¶ 20.

Parties dispute what actions were taken by the Apartment Complex's management staff following the June 5, 2020 complaint. Citing to Mr. Hersh's deposition, ECF 40-12 ("Hersh Dep."), Corporate Defendants assert that "Nieuw Amsterdam investigated the allegation and the complaining tenant advised that she did not wish to pursue any further action against Defendant Alvarez." Defs.' 56.1 ¶ 14. In direct contradiction, Ms. Martin submitted a declaration from Ms. Paccione under 28 U.S.C. § 1746 that states that she "wanted [Nieuw Amsterdam Management, LLC] to take action" and that "[t]o [her] knowledge, my complaints were never even investigated, and no remedial action was taken against Mr. Alvarez." Paccione Decl. ¶¶ 10–11; Pl.'s 56.1 ¶¶ 21–23.

Mr. Alvarez's harassing behavior toward Ellen Paccione continued after she made the June 5, 2020 complaint. On November 13, 2020, she again complained to Apartment Complex management that Mr. Alvarez was sexually harassing her. Pl.'s 56.1 ¶ 26; ECF 47-5 ("Allegation 2"). The complaint, in relevant part, read: "I do not want him in my apartment as I am VERY [uncomfortable] with him. I do not want him to try to kiss me or anything else. He is extremely inappropriate." *Id.* This email was sent to Ms. Marte, the assistant property manager assigned to the Apartment Complex, and included copies of the text messages that Defendant Alvarez sent Ms. Paccione. *Id.* ¶¶ 26–28.

3

In addition to Ms. Paccione's two complaints, General Manager Hersh received information regarding at least one other complaint from a female tenant describing unwanted sexual advances from Defendant Alvarez. Pl.'s 56.1 at ¶¶ 35–36; ECF 47-3 ("B. Hersh Dep.") at 56:11–58:9.[2]

**B. Ms. Martin's Sexual Assault**

In June 2021, Ms. Martin traveled from Florida to New York to help her then-partner Michael Shtieman clean out the apartment of his recently deceased mother who lived in the Apartment Complex. Defs.' 56.1 ¶ 3. Upon Ms. Martin's arrival, Mr. Shtieman introduced Ms. Martin to Defendant Alvarez, and she advised Alvarez that she would be helping with an apartment clean out. *Id.* ¶¶ 3–4.

On July 7, 2021, Ms. Martin alleges that, while she was in the process of dropping off garbage in an Apartment Complex common area, Defendant Alvarez sexually assaulted her by his office, in an Apartment Complex elevator, and on the fourth floor of the building. *Id.* ¶¶ 1, 5; Pl.'s 56.1 ¶¶ 39–46. Although Corporate Defendants dispute—without pointing to relevant evidence— whether the "alleged" attack took place at all, Defs.' 56.1 ¶¶ 1, 5–7, Ms. Martin describes the sexual assault in detail in her factual submissions and reported the alleged sexual assault to the police on July 9, 2021. Pl.'s 56.1 ¶¶ 39–49.

It is undisputed that on July 9, 2021 responding NYPD officers came to Mr. Shtieman's unit at the Apartment Complex to investigate Ms. Martin's allegation. Defs.' 56.1 ¶ 7; Pl.'s 56.1 ¶ 50. Defendant Alvarez was arrested at the Apartment Complex that same day, and was prosecuted

---

[2] Corporate Defendants' 56.1 statement is internally contradictory with respect to Mr. Hersh's awareness of previous tenant complaints. Paragraph 13 states that "Mr. Hersh could not recall of any complaints concerning sexual harassment, aside from the Plaintiff's herein" while paragraph 14 cites to Mr. Hersh's deposition for the proposition that Nieuw Amsterdam, through Mr. Hersh, received another complaint about Defendant Alvarez's misconduct.

by the Kings County District Attorney's office. Defs.' 56.1 ¶ 8. He was charged with two counts of forcible touching, PL 130.52(1), sexual abuse in the third degree, PL 130.55, and harassment in the second degree, PL 240.26(1). Defs.' 56.1 ¶ 8; Pl.'s 56.1 ¶ 49. Ms. Martin corresponded with the Kings County District Attorney's Office regarding her account of the alleged sexual assault. ECF 47-8.

While Corporate Defendants state that Apartment Complex management was aware of Ms. Martin's complaint, Defs.' 56.1 ¶ 13, it appears that management did not retain any surveillance footage capturing the time of the attack. ECF 47-9 ("Apartment Complex Email to District Attorney"). Apartment Complex management appears to have provided the Brooklyn District Attorney's Office with video recordings of surveillance footage of other dates and times. *Id.* Ms. Martin asserts that Defendant Alvarez or Mr. Schmulowitz, as the two individuals with access to the Apartment Complex's surveillance footage, may have intentionally deleted the surveillance footage of the time of the alleged sexual assault. Pl.'s 56.1 ¶¶ 59–60. It is undisputed that Defendant Alvarez continued to work at the Apartment Complex as of September 12, 2022, the day Corporate Defendants filed their Amended Answer. Pl.'s 56.1 ¶ 16; ECF 15 ("Amended Answer") ¶¶ 51, 53.

A few days after Defendant Alvarez's arrest at the Apartment Complex on July 9, 2021, Ms. Martin returned to Florida, where she sought medical care, psychological treatment, and physical therapy, which she claims were related to the sexual assault. Defs.' 56.1 ¶¶ 9–11. Specifically, Ms. Martin presented to a hospital with complaints of vaginal pain, and a fiber was removed after a pelvic examination. *Id.* ¶ 10.

On June 14, 2022, Ms. Martin filed a complaint in this court in a unified action alleging claims of battery and assault against Defendant Alvarez, ECF 1 ¶¶ 54–61, and negligent retention

and supervision against Corporate Defendants. *Id.* ¶¶ 62–67. Corporate Defendants filed their answer on August 5, 2022, ECF 13, and then amended their answer on September 12, 2022. ECF 15. Defendant Alvarez is in default and has not appeared in this action. Corporate Defendants moved for summary judgment on January 28, 2025, ECF 40-1 ("Defs.' Mot."), and Ms. Martin responded and also cross-moved for summary judgment on March 5, 2025, ECF 44 ("Pl's Mot."); ECF 45 ("Pl.'s Mem."). Corporate Defendants filed papers in reply to Ms. Martin's opposition and in response to Ms. Martin's cross-motion for summary judgment on March 12, 2025. ECF 48 ("Defs.' Opp."). Ms. Martin filed her reply on March 19, 2025. ECF 49 ("Pl.'s Reply").

## II. STANDARD OF REVIEW

### A. Summary Judgment

"Summary judgment is appropriate only where the record shows 'that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 80 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). A material fact is one that "can affect the outcome under the applicable substantive law." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). A genuine dispute is one that can "reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A district court may consider "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (citation omitted). Materials relied on at summary judgment need not be admissible in the form presented to the district court, and may be considered so long as they "contain evidence that will be presented in admissible form at trial." *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001).

6

The party seeking summary judgment carries the burden of proving that there is no genuine dispute of material fact, and the district court must draw all reasonable inferences in favor of the nonmoving party. *See Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223–24 (2d Cir. 1994). Nevertheless, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

## B. Local Rule 56.1

In moving for summary judgment or answering such a motion, litigants in this district are required by Local Civil Rule 56.1 to submit a statement setting forth "the material facts as to which the moving party contends there is no genuine issue to be tried," each of which "must be followed by citation to evidence that would be admissible and set forth as required by Fed. R. Civ. P. 56(c)." Local Rule 56.1(a), (d). Facts set forth in a moving party's statement "will be deemed to be admitted . . . unless specifically denied and controverted by a correspondingly numbered paragraph in a statement required to be served by the opposing party." Local Rule 56.1(c). The nonmoving party may provide a "statement of additional material facts as to which it is contended that there exists a genuine issue to be tried," again supported by citation to admissible evidence. Local Rule 56.1(b), (d). In effect, Local Rule 56.1 "puts litigants on notice that '[f]ailure to submit such a statement may constitute grounds for denial of the motion.'" *Suares v. Cityscape Tours, Inc.*, 603 F. App'x 16, 17 (2d Cir. 2015) (quoting Local Rule 56.1(a)); *see also Ringel v. Cnty. of Nassau*, No. 18-CV-1930, 2021 WL 4316715, at *3 (E.D.N.Y. Sept. 22, 2021) (collecting cases). The Second Circuit has instructed that Local Rule 56.1 is "strict," and explained that "failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in that statement are uncontested and admissible." *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412,

417–18 (2d Cir. 2009). "[O]nce the nonmoving party has put material facts into dispute via its additional 56.1 statement, the moving party must rebut them in order for the Court to grant summary judgment in its favor." *Okeke v. New York & Presbyterian Hosp.*, No. 16-CV-570, 2017 WL 1536060, at *1 (S.D.N.Y. Apr. 24, 2017). "Otherwise, the moving party has failed to meet its burden." *Id.* (quotation marks omitted).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the court will consider the evidentiary sources of the claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019). In evaluating the evidence offered in support of dueling Rule 56.1 statements, a court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994). Central to the dispute between Ms. Martin and Corporate Defendants is whether the alleged sexual assault was "unforeseeable" by Corporate Defendants and whether the July 7, 2021 sexual assault actually took place. Pl.'s 56.1 ¶ 1; Defs.' 56.1 ¶ 1; Defs.' Opp. at 1–2.

### III. DISCUSSION

#### A. Local Rule 56.1 Issues

At the outset, I must address two interlocking issues that pertain to Local Rule 56.1 in the parties' dueling motions for summary judgment.

First, Ms. Martin disputes many assertions in Corporate Defendants' 56.1 statement and introduces additional material facts that pertain to Corporate Defendant's liability. Specifically, in the context of Corporate Defendant's motion for summary judgment, Ms. Martin has introduced additional material facts regarding Corporate Defendants' receipt and handling of complaints about Defendant Alvarez's prior sexual misconduct. Pl.'s 56.1 ¶¶ 17–38. The same is true for the question of Littleleaf Property Management's role, *id.* ¶¶ 61–63, and putative damages, *id.* ¶¶ 51–

8

60. Corporate Defendant's failure to file an appropriate response provides, at the very least, an independent basis to deny Corporate Defendant's motion for summary judgment.[3]

Second, Corporate Defendants have failed to properly respond to Ms. Martin's 56.1 statement in support of her affirmative motion for summary judgment. Rather than responding point-by-point to the 56.1 statement, Corporate Defendants submitted responses to the Statement of Facts section of Ms. Martin's memorandum of law. Defs.' Opp. at 1–3. As Ms. Martin has cross-moved for summary judgment, Corporate Defendants had an independent obligation to respond to each individual paragraph under the requirements of Local Rule 56.1. This is because each party's motion must be independently examined on its own merits, with the court considering the facts most favorable to the non-moving party. *See Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). Moreover, many of Corporate Defendants' responses, even if taken as corresponding responses to Ms. Martin's factual assertions in her Local Rule 56.1 statement, do not comply with Local Rule 56.1(d)'s requirement that such statements cite to evidence. For example Corporate Defendants' responses numbered 1, 3, 5, and 7–13 dispute Ms. Martin's factual assertions without citation to any evidence.

In the absence of a compliant 56.1 response, I may accept facts from Ms. Martin's Local Rule 56.1 statement as true in considering her affirmative motion for summary judgment to the extent that those factual assertions are supported by the record. *See Truitt v. Salisbury Bank & Tr. Co.*, 52 F.4th 80, 82 n.1 (2d Cir. 2022). Courts have grounded their summary judgment rulings for one party on the other party's failure to file a counterstatement to a Local Rule 56.1 statement of

---

[3] Corporate Defendants argue that it would not be liable for Ms. Martin's injuries even assuming the July 7, 2021 sexual assault took place and that it was on notice that Defendant Alvarez had sexually harassed a single female tenant. As I discuss in *supra* Section III(C), Ms. Martin's negligence claims against Corporate Defendants do not fail as a matter of law under this fact pattern.

material facts. *See DeRienzo v. Metro. Transp. Auth.*, 694 F. Supp. 2d 229, 232 n.1 (S.D.N.Y. 2010). Here, I have reviewed the underlying record citations provided by Ms. Martin. *See Neuman v. Glob. Sec. Sols., Inc.*, No. 22-1412-CV, 2023 WL 6205966, at *1 (2d Cir. Sept. 25, 2023) (to ensure that assertions of fact in a 56.1 statement are adequately supported, a district court may "exercise[] its undoubted discretion to engage in independent scrutiny of the record"). While a district court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement," they are "not required to consider what the parties fail to point out in their Local Rule 56.1 statements." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and quotation marks omitted).

Notwithstanding my decision to admit Ms. Martin's uncontroverted facts in her 56.1 statement, her affirmative motion will not be automatically granted. As the Second Circuit observed in *Giannullo*, "'[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law.'" *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

## B. Claims Against Defendant Alvarez

Ms. Martin moves for summary judgment on her assault and battery claims against Defendant Alvarez, who has failed to appear in this action. Pl.'s Mem. at 1. Because no defendant has proffered evidence that contradicts Ms. Martin's account of the July 7, 2021 sexual assault, I grant Ms. Martin's summary judgment motion as to Defendant Alvarez.

Under New York common law, civil battery "is an intentional wrongful physical contact with another person without consent," and civil assault "is an intentional placing of another person in fear of imminent harmful or offensive contact." *Tardif v. City of New York*, 991 F.3d 394, 410 (2d Cir. 2021). "It does not matter that the penal law lays down specific elements for the various

offenses or degrees of offenses that entail unwanted touching," as "in the civil context . . . , the common meanings of 'assault' and 'battery' subsume all forms of tortious menacing and unwanted touching." *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993); *accord* 6A N.Y. Jur. 2d Assault—Civil Aspects § 1. "The terms 'assault' and 'battery' do not change in meaning depending on the degree of violence, the means of inflicting injury, or the part of the body injured." *Id.* Under New York law, "a rape is an undisputed assault and battery." *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001).

Here, Ms. Martin may have moved for summary judgment against answering Corporate Defendants and sought a default judgment against Defendant Alvarez, but she has not done so. *See, e.g.*, *Williams v. Cohen*, 101 F. App'x 862, 863 (2d Cir. 2004). Considering this procedural posture, I may assess the record to determine whether a triable issue exists as to Defendant Alvarez, notwithstanding his failure to oppose the summary judgment motion; deny or withhold consideration of Ms. Martin's motion against Defendant Alvarez and order her instead to move for a default judgment; or construe Defendant Alvarez's failure to appear or oppose the motion as admission of the allegations against him. *See Kovalchik v. City of New York*, No. 09-CV-4546, 2014 WL 4652478, at *11 (S.D.N.Y. Sept. 18, 2014). The Second Circuit has explained that a district court may not enter a default judgment when a party fails to respond to an opponent's motion for summary judgment and must instead "examine the movant's statement of undisputed facts and the proffered record support and determine whether the movant is entitled to summary judgment." *Jackson v. Fed. Exp.*, 766 F.3d 189, 197 (2d Cir. 2014). Therefore, it is appropriate to review the record and consider whether Ms. Martin is entitled to summary judgment on her claims against Defendant Alvarez.

Ms. Martin submits over thirty pages of testimony regarding the July 7, 2021 attack. Martin Dep. at 33:3–66:6. The Kings County District Attorney's Office provided notice regarding its intention to offer Ms. Martin as a witness in its prosecution of Defendant Alvarez. *See* ECF 47-6. It is undisputed among appearing parties that Ms. Martin called the police on July 9, 2021 to report that an attack took place. Defs.' Opp. at 2; Defs.' 56.1 ¶ 7; Pl.'s 56.1 ¶¶ 7–8, 49.[4] Viewed in the light most favorable to Defendant Alvarez, who has neither appeared nor submitted testimony with an alternate account of what happened, a juror could not conclude based on the evidence submitted that the sexual assault did not take place. Therefore, I grant Ms. Martin's motion for summary judgment against Defendant Alvarez on her assault and battery claims.

## C. Negligent Supervision Claim Against Corporate Defendants

Ms. Martin also seeks to hold Corporate Defendants liable for the sexual assault under a negligent supervision and retention theory. There are two discrete factual questions that pertain to the cross-motions for summary judgment on the negligent supervision claim. The first is whether the assault actually occurred, since the Corporate Defendants are not bound by the facts deemed admitted by Defendant Alvarez. The second is whether, if the assault did occur, it was reasonably foreseeable to Corporate Defendants. For the reasons below, I find that while the fact of the assault is not genuinely disputed, there is a genuine dispute of material fact as to whether the assault was reasonably foreseeable, which precludes summary judgment for either party.

---

[4] While Defendant Alvarez has submitted no evidence that the July 7, 2021 attack did not happen, there is an identity of interest between Corporate Defendants and Defendant Alvarez in disputing whether the July 7, 2021 attack occurred because Corporate Defendants are not liable to Ms. Martin for negligent supervision if the attack did not even happen.

### 1. Fact of Sexual Assault

Ms. Martin argues that her account of the July 7, 2021 sexual assault cannot be disputed by Corporate Defendants because Defendant Alvarez defaulted. While it is established, "that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint," Corporate Defendants have not defaulted in this action. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *see* Fed. R. Civ. P. 8(b)(6). Longstanding doctrine maintains that a non-defaulting defendant is not bound by the facts deemed admitted by a defaulting co-defendant. *See The Mary*, 13 U.S. 126, 143 (1815) ("In the same cause, a fact, not controverted by one party, who does not appear, and therefore, as to him taken for confessed, ought not, on that implied admission, to be brought to bear upon another who does appear, does controvert, and does disprove it.").

Describing Ms. Martin's claim as arising out of an "unforeseeable alleged assault," Corporate Defendants dispute whether the sexual assault happened. Defs.' 56.1 ¶ 1. However, Corporate Defendants offer no evidence that Defendant Alvarez did not sexually assault Ms. Martin on July 7, 2021. Ms. Martin maintains that security camera footage would corroborate her account of the alleged July 7, 2021 sexual assault. In an email to the Brooklyn District Attorney's Office, Ms. Martin repeatedly states that her assertions are backed up by footage capturing the attack as "there was video [surveillance] where all 3 attacks took place." ECF 47-8. Ms. Martin has testified that she observed security cameras in the hallways that would have captured the July 7, 2021 sexual assault. Martin Dep. at 44:15–44:23; 45:5; 109:3–109:7; 112:5–112:25; 114:12–115:2. However, it appears that no surveillance footage of the time and place of the alleged attack was produced—either in this action or in the criminal prosecution of Defendant Alvarez—because the Apartment Complex maintains a policy of overwriting security camera footage after one

month. *See* ECF 47-9. Nieuw Amsterdam's General Manager and Chief Operating Officer testified that Defendant Alvarez was one of two people with access to security camera footage, Hersh Dep. at 109:9–111:10, and that neither he nor the Apartment Complex's property manager preserved security footage that would have corroborated or contradicted Ms. Martin's account of the alleged sexual assault. *Id.* at 112:8.

Furthermore, Corporate Defendants do not cite any testimony from the Apartment Complex's property manager or assistant property manager, the employees that would have investigated Defendant Alvarez following the sexual assault allegations. Nieuw Amsterdam's General Manager and Chief Operating Officer was unable to recall the details of his discussions with them regarding what actions they took following the alleged sexual assault. Hersh Dep. at 78:16–79:17. It appears that the Apartment Complex's property manager, who Mr. Hersh attributes any responsibility for investigating sexual assault allegations, has refused to participate in this litigation. Pl.'s Mem. at 16. It also appears that the Apartment Complex's assistant property manager at the time of the alleged attack is no longer employed by Corporate Defendants. Hersh Dep. at 18:20–18:22; 19:3–20:2. Nevertheless, Mr. Hersh observed that "there was enough [justification] that [Defendant Alvarez] certainly should have been given a verbal warning, possibly even a written warning," following July 7, 2021. *Id.* at 80:17–81:6.

The lack of record evidence disputing Ms. Martin's account of the July 7, 2021 sexual assault is further emphasized by Corporate Defendants' submissions under Local Rule 56.1. In their 56.1 statement, Corporate Defendants cite Ms. Martin's deposition, ECF 40-10, and New York Police Department bodycam footage from Defendant Alvarez's arrest, ECF Nos. 40-7, 40-8, for the undisputed fact that "Plaintiff claims that Defendant Alvarez inappropriately touched her on a single unspecified day in July 2021" in a "attack [that] involved touching over her clothing."

Defs.' 56.1 ¶ 5. Indeed, this is evidence *supporting* rather than contradicting Ms. Martin's sexual assault claims against Defendant Alvarez.

Corporate Defendants do not support their noncompliant responses to Ms. Martin's 56.1 statement of additional material facts with citations to relevant evidence. For example Corporate Defendants admit that Ms. Martin "was throwing out garbage near Mr. Alvarez's office," but denies the remainder of the statement that describes Defendant Alvarez's unwanted sexual conduct toward Ms. Martin. Defs.' Opp. at 1–2. To support this denial, Corporate Defendants cite page 37 of Ms. Martin's deposition which describes a short recess in her deposition before she resumes her account of how she "was just entered into and violated" by Defendant Alvarez. ECF 40-10 at 37. Indeed, page 37 of Ms. Martin's deposition falls within a nearly 40-page span of Ms. Martin's account of how Defendant Alvarez sexually assaulted her, and the aftermath of that assault. Martin Dep. at 25:18–64:25. Replying to the paragraph in Ms. Martin's Statement of Facts describing Mr. Alvarez's unwanted sexual conduct toward her in the Apartment Complex elevator and fourth floor, Corporate Defendants' third numbered response reads "Deny" without citing to any evidence. Again citing to no evidence, Corporate Defendants deny Ms. Martin's assertion that Mr. Alvarez defaulted in the instant action and that he remained employed as the Apartment Complex superintendent six months after the instant suit was filed. This suit was filed on June 14, 2022. ECF 1. The Amended Answer provided by Corporate Defendants was submitted on September 12, 2022, three months later, and it stated that Defendant Alvarez was still employed as superintendent of the Apartment Complex. Amended Answer ¶¶ 51, 53.

Based on submitted evidence, the only argument that Corporate Defendants raise as to why the July 7, 2021 sexual assault did not take place is that Defendant Alvarez was released shortly after his arrest on July 9, 2021, and remained employed as the Apartment Complex's

superintendent. Hersh Dep. at. 79:2–79:17. Nieuw Amsterdam's General Manager and Chief Operating Officer testified that Apartment Complex staff investigated the incident but could provide no additional details. *Id.* at 78:16–79:22. A background check was conducted on Defendant Alvarez only after Ms. Martin brought suit. *Id.* at 79:20–79:22. In sum, the record contains no alternative explanation of what happened on July 7, 2021. Therefore, I find that there is no material dispute of evidence regarding the July 7, 2021 sexual assault as it pertains to Ms. Martin's motion for summary judgment against Corporate Defendants.

### 2. Foreseeability

Corporate Defendants argue that, even if the July 7, 2021 sexual assault took place, they are entitled to summary judgment because the facts alleged by Ms. Martin do not establish that the assault was foreseeable. Ms. Martin moves for summary judgment on the same negligent supervision claim, arguing that the undisputed facts demonstrate that the Corporate Defendants were "on notice of Mr. Alvarez's proclivity for sexual misconduct" and failed to take appropriate measures in response. Pl.'s Mem. at 7.  For the reasons that follow, I find that there is a genuine dispute of material fact as to whether Corporate Defendants breached their duty of care to Ms. Martin.

To succeed on a negligence claim under New York law, a plaintiff must demonstrate: (1) the existence of a legal duty owed plaintiff by defendants, and (2) a breach of that duty, (3) proximately causing injury to plaintiff. *See Kazanoff v. United States*, 945 F.2d 32, 35 (2d Cir. 1991). While employers are generally not vicariously liable for the sexual misconduct of employees, employers can still be held liable under theories of negligent hiring, negligent retention, and negligent supervision. *See In re Roman Cath. Diocese of Rockville Ctr.*, 651 B.R. 146, 160–61 (Bankr. S.D.N.Y. 2023); *Kenneth R. v. Roman Cath. Diocese of Brooklyn*, 654

N.Y.S.2d 791, 793–94 (App. Div. 2d Dep't 1997). "Under New York law, to state a claim for negligent hiring, training, supervision or retention, 'in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship . . . (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence, . . . and (3) that the tort was committed on the employer's premises or with the employer's chattels.'" *Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 463–64 (S.D.N.Y. 2012) (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)). Such claims "arise[] when an employer places an employee in a position to cause *foreseeable* harm, harm which the injured party most probably would have been spared had the employer taken reasonable care in supervising or retaining the employee." *Doe v. Montefiore Med. Ctr.*, No. 12-CV-686, 2013 WL 624688, at \*3 (S.D.N.Y. Feb. 19, 2013) (quoting *Vione v. Tewell*, 820 N.Y.S.2d 682, 687 (Sup. Ct. 2006)), *aff'd* 598 F. App'x 42 (2d Cir. 2015).

To establish foreseeability, "[a]ctual or constructive notice to the [employer] of prior similar conduct generally is required." *Neveah T. v. City of New York*, 18 N.Y.S.3d 415, 418 (App. Div. 2d Dep't 2015) (citation omitted). Prior complaints informing an employer about an employee's conduct are "highly relevant" in assessing whether the employer was on notice about the complained-of behavior. *Williams v. Muhammad's Holy Temple of Islam, Inc.*, No. 00-CV-1251, 2006 WL 297448, at \*6 (E.D.N.Y. Feb. 8, 2006). Even unsubstantiated complaints may be sufficient to put an employer on notice for their employees' propensity for injurious conduct. *See Patterson v. State*, No. 121681, 2014 WL 4548437, at \*10–11 (N.Y. Ct. Cl. Aug. 29, 2014) (rejecting argument that employer did not know about employee's "propensity for sexual misconduct . . . because the prior four [complaints] . . . were found to be unsubstantiated"). Here,

Corporate Defendants do not dispute that a duty of care was owed to Plaintiff and all other tenants and guests at the apartment complex. They argue, however, that they did not breach said duty because the sexual assault "was an unforeseeable event." Def. Mot. at 2.

Ms. Martin has adduced three distinct pieces of evidence that bear on foreseeability. First, Ms. Martin has presented evidence of a complaint from Ellen Paccione on June 5, 2020, describing unwanted propositions for sex from Defendant Alvarez. ECF 47-4. Second, Ms. Martin has presented evidence of a second complaint from Ms. Paccione made on November 13, 2020, describing how she felt unsafe with the prospect of having Defendant Alvarez in her apartment because she feared that he would make unwanted sexual advances on her. ECF 47-5. Corporate Defendants do not dispute that Ms. Paccione made these complaints. *See* Def. Mot. at 3. Third, another female tenant apparently reported to Nieuw Amsterdam that Mr. Alvarez had been "flirting with her as well and that Mr. Alvarez is a 'creep.'" Pl.'s 56.1 ¶ 36. Corporate Defendants advance three arguments for why this evidence cannot establish that the assault was foreseeable.

First, Corporate Defendants argue that the complaints did not provide notice because they merely concerned harassment—not forcible sexual assault. New York state courts appear to take "differing approaches relating to foreseeability in cases alleging that sexual assault by an employee was foreseeable to the employer." *Doe v. Montefiore Med. Ctr.*, 598 F. App'x 42, 43 (2d Cir. 2015). In some cases, "the plaintiff must offer evidence that the employer knew (or should have known) of the employee's 'propensity . . . to engage in inappropriate sexual conduct.'" *Id.* (citing *Ehrens*, 385 F.3d at 235). Other courts applying New York law require that, "the plaintiff . . . show only that the employer knew (or should have known) of the employee's propensity to engage in physical assault, whether or not such conduct was of a sexual nature." *Id.* (citing *Dawn VV v. State of N.Y.*, 47 A.D.3d 1048, 1051 (App. Div. 3d Dep't 2008)). Generally, the plaintiff must show that

the employer knew or should have known of the employee's "prior misconduct . . . of the same kind that caused the injury," and "general, unrelated or lesser allegations of prior wrongdoing are insufficient." *Doe v. Alsaud*, 12 F. Supp. 3d 674, 681 (S.D.N.Y. 2014).

District Judge Nathan's overview of caselaw analyzing when an employer is on notice of an employee's propensity for injurious conduct in *Doe v. City of New York* is instructive, No. 15-CV-0117, 2018 WL 6095847, at *7 (S.D.N.Y. Nov. 21, 2018). There, Judge Nathan determined that "[a]n employer does not need to have notice of an employee's propensity to behave in the exact manner in which he behaved with a plaintiff in order for liability to attach, only notice of the employee's propensity for that sort of behavior." *Id.* (quotation marks omitted and alterations adopted). "Even a single previous report of misconduct may be sufficient to create an issue of fact regardless of the severity of the previous incident." *Id.* (citing *Bliss v. Putnam Valley Cent. Sch. Dirt.*, No. 06-CV-15509, 2011 WL 1079944, at *10 (S.D.N.Y. Mar. 24, 2011) (denying summary judgment on a negligent supervision claim where a teacher had held a female student in a way that made her uncomfortable prior to allegedly raping another female student)); *see also Doe v. Chenango Valley Cent. High Sch. Dist.*, 938 N.Y.S.2d 360, 362 (App. Div. 3d Dep't 2012) (denying summary judgment on a negligent supervision claim where employer previously received complaint that bus driver exposed himself to children prior to allegedly sexually abusing two children)). Applying this case law to the present facts, I reject the notion that only a "prior criminal incident [or] assault" would put Corporate Defendants on notice of Defendant Alvarez's propensity to commit sexual assault. Viewing the evidence in the light most favorable to Ms. Martin, a reasonable jury could clearly conclude that the July 7, 2021 sexual assault was foreseeable.

Second, Corporate Defendants argue that they were not on notice because one or more of the tenant complaints was never escalated to management. This fact is immaterial, however, as the New York Court of Appeals recently held that "an employer cannot avoid liability for negligent supervision and retention by shutting its eyes to the tortious practices and propensities of its employees" and that an employer "should know of an employee's dangerous propensity if it has reason to know of the facts or events evidencing that propensity." *Moore Charitable Found. v. PJT Partners, Inc.*, 40 N.Y.3d 150, 158 (2023) (quotation marks omitted). The notice element is satisfied "if a reasonably prudent employer, exercising ordinary care under the circumstances, would have been aware of the employee's propensity to engage in the injury-causing conduct." *Id.* at 158–159. Thus, while the record suggests that Corporate Defendants lacked a formal mechanism for escalating the complaints made regarding Defendant Alvarez, Hersh Dep. at 112:9–114:25, New York law establishes that a negligent supervision claim cannot be defeated by an employer's unreasonable ignorance.

Third, Corporate Defendants argue that they discharged their duty of reasonable care by conducting a background check on Defendant Alvarez and responding adequately to all tenant complaints. Defs.' Reply at 5, 7. Neither of these factors resolves the issue of foreseeability definitively. As to the tenant complaints, Corporate Defendants maintain that the complaint was "thoroughly and properly investigated," Def. Reply at 5, and that the complainant—presumably Ms. Paccione—advised the assistant property manager that "she did not wish to pursue any further action." *Id.* Corporate Defendants argue that no duty to Ms. Martin was breached because it "took appropriate and necessary measures to protect the safety and wellbeing of all tenants and guests in the building by speaking with the one and only tenant that made a prior complaint." Def. Mot. at 4. This characterization of Ms. Paccione's June 5, 2020 complaint is directly contested by the

evidence cited by Ms. Martin, which includes a written declaration from Ms. Paccione that states that she wanted building management to carry out the investigation "at all times" and that she received no follow up after she submitted her complaints. *See* ECF 47-2. As to the background check, it was conducted only *after* Ms. Martin's sexual assault took place, which renders it irrelevant to the matter at hand. *Cf. Zilioli v. City of New York*, No. 17-CV-9495, 2020 WL 1548763, at *2–3, *7 (S.D.N.Y. Apr. 1, 2020) (discussing background check that occurred *before* the alleged sexual assault in that case took place). The background check that Corporate Defendants attach to their reply memorandum is dated July 1, 2022, ECF 48-1, and Corporate Defendants state that it was initiated after it was made aware of Ms. Martin's injury.

Based on evidence in the record of previous complaints regarding Defendant Alvarez's alleged sexual harassment and misconduct, a reasonable juror could find that Corporate Defendants were on actual or constructive notice that their employee had a propensity to commit sexual assault. At the same time, a reasonable juror may find that Corporate Defendants took reasonable care in supervising or retaining Defendant Alvarez after receiving complaints about his behavior. Because there are material facts that bear on foreseeability that are still in dispute, I deny both Corporate Defendants' and Ms. Martin's motions for summary judgment with respect to the negligent supervision claim. "Foreseeability is a question for a jury." *Bliss*, 2011 WL 1079944, at *9 (citing *Bell v. Bd. of Educ.*, 665 N.Y.S.2d 42 (1997)).

**D. Littleleaf**

Corporate Defendants move for summary judgment to dismiss Ms. Martin's claim against Littleleaf. It argues that Littleleaf is not a proper party to this action because it had no role in the management of the Apartment Complex and Defendant Alvarez. Citing Mr. Hersh's testimony, Corporate Defendants argue that Littleleaf owed no duty to Ms. Martin at the time of the attack

because it was "merely the legal registered agent with no ownership or management function at the premises." Def. Mot. at 4. Corporate Defendants argue that the fact that Aaron Jungreis of AAA West hired Littleleaf for the purpose of managing property is subverted by the fact that AAA West was also the entity that hired Defendant Alvarez and managed him on the date of the attack. Defs.' Opp. at 10. Ms. Martin argues that the record shows the opposite—that Littleleaf has been explicitly characterized as the Apartment Complex's manager during the time of the attack. Pl.'s Mot. at 12.

Viewed in the light most favorable to Ms. Martin, there appears to be a genuine issue of material fact as to Littleleaf's management of Defendant Alvarez. Nieuw Amsterdam General Manager and Chief Operating Officer Mr. Hersh testified that "Nieuw Amsterdam *and* Littleleaf were the ones that would have been involved" in the discovery process in this action because AAA was not actively involved in day-to-day management. Hersh Dep. at 67:8–67:13 (emphasis added). In Mr. Hersh's words, "Littleleaf was created . . . by the ownership of Nieuw Amsterdam to manage third-party properties." *Id.* at 12:23–12:25. It operated in "parallel" with Nieuw Amsterdam. *Id.* at 13:4. Mr. Hersh also responded affirmatively when asked if Aaron Jungreis, the owner of the Apartment Complex, hired Nieuw Amsterdam and Littleleaf to manage the Apartment Complex. *Id.* at 67:17–67:20. On the other hand, Mr. Hersh testified that the Apartment Complex employees involved in building management—such as the property manager and assistant property manager—were formally employed by Nieuw Amsterdam. *Id.* at 66:20–66:22. Corporate Defendants also admit that Nieuw Amsterdam managed employees including Defendant Alvarez. Defs.' Mot. at 4. In short, there is evidence in the record that suggests that both Nieuw Amsterdam and Littleleaf managed the Apartment Complex and Defendant Alvarez on the date of the alleged sexual assault.

Based on the record, I find that there remains a dispute of material fact as to whether Littleleaf is an appropriate party in this action. Therefore, I deny Corporate Defendants motion for summary judgment as to Littleleaf's liability.

## D. Punitive Damages

Finally, Corporate Defendants argue that Ms. Martin's request for punitive damages should be disallowed as a matter of law. Defs.' Mot. at 4. I deny Corporate Defendants' motion for summary judgment on this issue.

An award of punitive damage serves the dual purpose of punishing the offending party for wrongful conduct and deterring others from engaging in similar conduct. *See Solis-Vicuna v. Notias*, 898 N.Y.S.2d 45, 48 (App. Div. 2d Dep't 2010). Punitive damages have been described as a "hybrid between a display of ethical indignation and the imposition of a criminal fine," and serve to reflect a community's condemnation of one who willfully causes hurt or injury to another. *Home Ins. Co. v. Am. Home Prods. Corp.*, 75 N.Y.2d 196, 203 (1990) (quotation marks omitted). They are meant to "teach[] the defendant not to do it again, and [to deter] others from following the defendant's example." *Gomez v. Cabatic*, 159 A.D.3d 62, 72 (App. Div. 2d Dep't 2018) (citation omitted).

New York state courts "have long recognized that those who, without specifically intending to cause harm, nevertheless engage in grossly negligent or reckless conduct showing an utter disregard for the safety or rights of others, may also be deserving of the imposition of punitive damages." *Randi A.J. v. Long Island Surgi-Ctr.*, 842 N.Y.S.2d 558, 564 (2007) (collecting cases). A "jury is empowered" to award punitive damages once it "has determined the existence of actual malice—or its legal equivalent, reckless or wanton indifference to the rights of others." *Reynolds v. Pegler*, 123 F.Supp. 36, 38 (S.D.N.Y.), *aff'd* 223 F.2d 429 (2d Cir. 1955). "The concept of

punitive damages has been sanctioned under New York law in actions based on negligence[.]" *Home Ins. Co.*, 75 N.Y.2d at 204 (citing *Wittman v. Gilson*, 70 N.Y.2d 970 (1988)).

As a threshold matter, contrary to Ms. Martin's understanding, the legal standard for punitive damages in this case is not vicarious liability because she does not bring a claim for vicarious liability against Corporate Defendants. Pl.'s Mem. at 13. Instead, she brings a claim for negligent supervision and retention, and Defendant Alvarez's default in this action does not affect Corporate Defendants' capacity to defend itself from this claim. *See infra* SectionIII(C)(1). Therefore, Ms. Martin's second argument—that Corporate Defendants "ratified" Defendant Alvarez's alleged sexual assault of Ms. Martin as to evince maliciousness—is misdirected as the "complicity" standard set forth in *Melfi v. Mount Sinai Hospital*, 877 N.Y.S.2d 300, 312 (2009), does not apply. Here, the appropriateness of punitive damages depends on Corporate Defendants' decisions regarding retaining and supervising Defendant Alvarez, not whether it ratified the July 7, 2021 sexual assault against Ms. Martin.[5]

Indeed, a finder of fact could only award punitive damages if it found that Corporate Defendants were grossly negligent or reckless in their retention and supervision of Defendant Alvarez. For example, evidence that an employer "knew for a fact" that an employee had committed sexual misconduct might open the door to punitive damages. *Freeman v. Adams Mark Hotel*, No. 01-CV-768A, 2004 WL 1811393, at *2 (W.D.N.Y. Aug. 13, 2004). Here, the evidence

---

[5] In the context of vicarious liability, the New York Court of Appeals has held that "punitive damages can be imposed on an employer for the intentional wrongdoing of its employees only where management has authorized, participated in, consented to or ratified the conduct giving rise to such damages, or deliberately retained the unfit servant." *Loughry v. Lincoln First Bank, N.A.*, 67 N.Y.2d 369, 378 (1986). There, the trial court struck the punitive damages award because the employee's tortious actions were "spontaneous and unforeseeable by the superior officers." *Id.* at 375.

cited by Ms. Martin raises the possibility that Corporate Defendants "knew for a fact" that Defendant Alvarez had a propensity for sexual assault. *See infra* Section III(C)(2).

Corporate Defendants argue that Ms. Martin's claim for negligent supervision and retention cannot qualify for punitive damages because "there is no evidence that [it] acted with malicious intent toward [Ms. Martin]" as it "timely investigated the single complaint they received and acted in accordance with that claimant's request." Defs.' Mot. at 6. Disputing Corporate Defendants' characterization of the record, Ms. Martin responds with four reasons as to why a jury should be allowed to consider punitive damages: (1) Corporate Defendants acted extremely recklessly in their response to previous complaints; (2) Corporate Defendants ratified Defendant Alvarez's conduct; (3) Corporate Defendants have "repeatedly made false statements and engaged in other misconduct throughout this litigation"; and (4) punitive damages are a remedy "ill-suited" to be addressed at the summary judgment stage. Pl.'s Mem. at 12–13.[6]

Ms. Martin contests Corporate Defendants' assertion that the record shows that it properly responded to complaints regarding Defendant Alvarez. Instead, she argues that the record shows that Corporate Defendants acted "extremely recklessly in failing to investigate prior similar complaints." Pl.'s Mem. at 12. This factual dispute goes hand in hand with Ms. Martin's fourth

---

[6] Ms. Martin's third argument that Corporate Defendants' "repeated and material misconduct throughout this litigation should also bar their motion to preclude punitive damages," Pl.'s Mem. at 16, is irrelevant because the conduct relevant to her request for punitive damages stems from her negligence claim. At the summary judgment stage, it is improper to weigh Ms. Martin's allegations that Niuew Amsterdam's General Manager and Chief Operating Officer lied during his deposition, that Corporate Defendants mischaracterized evidence, and that Corporate Defendants' agents may have destroyed relevant evidence, Pl.'s Mem. at 16–17.

Indeed, if Ms. Martin believes that Corporate Defendants' litigation conduct rises to the level of spoliation, she should have elected to move for sanctions under Fed. R. Civ. P. 37(b). *See John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988).

argument that I should defer ruling on punitive damages at the summary judgment stage because they are a remedy rather than a claim. Pl.'s Mem at 18. Indeed, courts have observed that summary judgment is an "ill-suited procedural vehicle" to address punitive damages because they are a request for relief and not a "claim." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 517 F. Supp. 2d 662, 666 (S.D.N.Y. 2007). As the *MTBE* court observed, "the very concept of defendants' proposal—partial summary judgment as to a particular remedy—is outside the contemplation of the Federal Rules." *Id.*[7] Other courts have found that it would be "premature" to rule on the issue of punitive damages at summary judgment because they are questions properly reserved for a finding of fact at trial. *See Cheng v. Guo*, No. 20-CV-5678, 2022 WL 4237079, at *6 (S.D.N.Y. Sept. 13, 2022).

Reviewing the facts in the light most favorable to Ms. Martin, a reasonable juror could find that Corporate Defendants' actions—or lack of action—after receiving complaints about Defendant Alvarez's sexual misconduct constituted "wanton negligence or recklessness." *Home Ins. Co.*, 75 N.Y.2d at 203–204; *see also Smith v. Wade*, 461 U.S. 30, 56 (1983). A reasonable jury similarly could find that the imposition of punitive damages on Corporate Defendants is warranted because it failed to monitor Defendant Alvarez's conduct—even though he was in a position of authority at the Apartment Complex whose propensity for sexual assault threatened residents and visitors. In short, whether punitive damages are available against Corporate Defendants is a fact-bound question. *Schoenadel v. YouGov Am. Inc.*, No. 22-CV-10236, 2025 WL 371089, at *11 (S.D.N.Y. Feb. 3, 2025).

---

[7] The *Methyl* court treated defendants' motion for summary judgment on punitive damages as a motion *in limine* to exclude from trial all arguments and evidence that are relevant solely to punitive damages. 517 F.Supp.2d at 666. I decline to do so here because neither side suggests that there is any evidence that is admissible at trial only if punitive damages are in play.

For the reasons above, I will defer to trial—when the parties' evidence will be fully presented—the question of whether Ms. Martin has met the standard for punitive damages. Corporate Defendants may raise this issue again in a Rule 50(a) motion before the close of evidence.

## CONCLUSION

For the reasons above, I dismiss Corporate Defendants' motion for summary judgment. I grant Plaintiff's cross-motion for summary judgment in part against Corporate Defendants and in total against Defendant Alvarez.

SO ORDERED.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated: May 27, 2025
      Brooklyn, New York